UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
THE BOARD OF TRUSTEES OF THE DISTRICT
COUNCIL 1707 LOCAL 389 HOME CARE
EMPLOYEES AND PROFESSIONAL STAFF
PENSION FUND and THE BOARD OF
TRUSTEES OF THE DISTRICT COUNCIL 1707
LOCAL 389 HOME CARE EMPLOYEES
HEALTH AND WELFARE FUND,

                Plaintiffs,

      - against -

HOME ATTENDANT VENDOR AGENCY, INC.,

                Defendant.
------------------------------------------------------------------x

Civil Action No.:

# COMPLAINT

The Board of Trustees (the "Pension Trustees") of the District Council 1707 Local 389 Home Care Employees and Professional Staff Pension Fund (the "Pension Fund") and the Board of Trustees ("Welfare Trustees," together with the Pension Trustees, the "Trustees") of the District Council 1707 Local 389 Home Care Employees Health and Welfare Fund (the "Health Fund," together with the Pension Fund, the "Funds"), by their attorneys, Cohen, Weiss and Simon LLP, as and for their complaint against Home Attendant Vendor Agency, Inc. ("HAVA," together with the Funds, the "Parties"), allege as follows:

1. This is an action by the Board of Trustees of two separate employee benefit plans for monetary and injunctive relief under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145.

2. This action arises from the failure of defendant HAVA to make payments to the Funds as required by a settlement agreement governed by ERISA, the applicable collective bargaining agreements between HAVA and the Community and Social Agency Employees

01105949.3

Union, Local 389, District Council 1707, American Federation of State, County and Municipal Employees (the "Union"), and the trust agreements governing the Funds.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331; Sections 502(a)(3), 502(e)(1), 502(f), and 515 of ERISA; and 29 U.S.C. §§ 1132(a)(3), 1132(e)(1), 1132(f), and 1145.

4. Venue lies in this district pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and 28 U.S.C. § 1391(b), as the Funds' and HAVA's principal place of business are in this District.

## THE PARTIES

5. Plaintiffs are the Board of Trustees of the Funds and are "fiduciaries" of the Funds as that term is defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). Plaintiffs have discretion and control over the assets and administration of the Funds. Moreover, Plaintiffs are authorized to bring this action on behalf of the Funds.

6. The Welfare Fund is an "employee welfare benefit plan" and "multiemployer plan," as defined by Section 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2) and 1002(37).

7. The Welfare Fund was established to provide medical benefits to eligible employees of the employers who participate in the Welfare Fund.

8. The Welfare Fund is a multiemployer plan organized and operating pursuant to ERISA and administered in New York County.

9. The Welfare Fund's principal place of business is at 420 West 45th Street, 5th Floor, New York, New York 10036.

10. The Pension Fund is an "employee pension benefit plan" and "multiemployer plan," as defined by Sections 3(2) and 3(37) of ERISA, 29 U.S.C. §§ 1002(1) and 1002(37).

11. The Pension Fund was established to provide retirement benefits to eligible employees of the employers who participate in the Pension Fund.

12. The Pension Fund is also known as the District Council 1707 Local 389 Home Care Employees Pension Fund.

13. The Pension Fund is a multiemployer plan organized and operating pursuant to the provisions of ERISA and administered in New York County.

14. The Pension Fund's principal place of business is at 420 West 45th Street, 5th Floor, New York, New York 10036.

15. Upon information and belief, Defendant HAVA has been, at all times material hereto, an "employer" as defined by ERISA Section 3(5), 29 U.S.C. §1002(5), and is a corporation incorporated in the State of New York.

16. HAVA's principal place of business is at 3036-B Nostrand Avenue, Brooklyn, New York 11229.

## THE COLLECTIVE BARGAINING AGREEMENTS

17. HAVA is and was, at all times relevant herein, a party to various collective bargaining agreements (the "CBAs") with the Union.

18. The CBAs set forth the terms and conditions of employment of employees represented by the Union and employed by HAVA for all periods relevant hereto.

19. The CBAs require HAVA to contribute to the Funds for hours paid to employees and reimbursed to the employer by various funding sources.

20. The CBAs cover one bargaining unit, but multiple funding sources to pay for the employees' wages and benefits.

21. The Parties executed a Memorandum of Agreement that continued the terms and conditions of an underlying CBA for the time period of December 31, 2009 to March 31, 2012 (the "MOA").

22. The MOA required that HAVA remit contributions to the Funds based on "work hours paid to employees and reimbursed to Employer."

23. Upon information and belief, the Parties executed three CBAs that were effective April 1, 2012 to March 31, 2013.

24. The first CBA covered employees who were employed on cases funded by and assigned to HAVA by managed care organizations, managed long-term care providers, or other funding sources ("Non-HRA CBA").

25. Upon information and belief, the Non-HRA CBA has renewed each year since March 31, 2013.

26. With respect to the Welfare Fund, Article XXIII of the Non-HRA CBA required that HAVA "agrees to contribute to the [Welfare] Fund at the following rate based upon the number of hours reimbursed to the Employer for work hours paid to Employees."

27. With respect to the Pension Fund, Article XXIV of the Non-HRA CBA requires HAVA to contribute a certain dollar amount "per reimbursed work hour to participate in the Pension Fund."

28. The second CBA covered employees who were employed on cases funded by New York State under contract with the City of New York, Human Resources

Administration, Personal Care Program or any other Medicaid funded program of the City of New York (the "HRA CBA").

29. Upon information and belief, the HRA CBA has renewed each year since March 31, 2013.

30. With respect to the Welfare Fund, Article XVII(2) of the HRA CBA requires HAVA to "contribute to the [Welfare] Fund at the following rate based upon the number of hours reimbursed to the Employer for work hours paid to Employees."

31. Further, with respect to the Welfare Fund, Article XVII(5) of the HRA CBA requires HAVA to "make available to the [Welfare] Fund any pertinent records of Employees that the [Welfare] Fund requires for its operations and permit the [Welfare] Fund to audit the Employer's payroll records, as necessary, by an auditor chosen by the Fund."

32. With respect to the Pension Fund, Article XVI(2) of the HRA CBA requires HAVA to "contribute to the Pension Fund at the following hourly rates based upon the number of hours reimbursed to the Employer for work hours paid to Employees."

33. Further, with respect to the Pension Fund, Article XVI(4) of the HRA CBA requires HAVA to "make available to the Pension Fund any pertinent records of Employees that the Pension Fund requires for its operations and permit the Pension Fund to audit the Employer's payroll records, as necessary, by an auditor chosen by the Fund, at the Fund's expense."

34. The third CBA covered employees who were employed on cases, previously part of the New York City Human Resources Administration funded case program, now funded by and assigned to HAVA by managed care organizations, managed long term care providers, or other funding sources ("Transitional CBA").

35. Upon information and belief, the Transitional CBA has renewed each year since March 31, 2013.

36. With respect to the Pension Fund, Article XVI(2) of the Transitional CBA requires HAVA "to contribute to the Pension Fund at the following hourly rates based upon the number of hours reimbursed to the Employer for work hours paid to Employees."

37. Further, with respect to the Pension Fund, Article XVI(4) of the Transitional CBA requires HAVA to "make available to the Pension Fund any pertinent records of Employees that the Pension Fund requires for its operations and permit the Pension Fund to audit the Employer's payroll records, as necessary by an auditor chosen by the Fund, at the Fund's expense."

38. With respect to the Welfare Fund, Article XVII(2) of the Transitional CBA requires HAVA to "contribute to the [Welfare] Fund at the following rate based upon the number of hours reimbursed to the Employer for work hours paid to Employees."

39. Further, with respect to the Welfare Fund, Article XVII(5) of the Transitional CBA requires HAVA to "make available to the [Welfare] Fund any pertinent records of Employees that the [Welfare] Fund requires for its operations and permit the [Welfare] Fund to audit the Employer's payroll records, as necessary, by an auditor chosen by the Fund."

## THE TRUST AGREEMENTS

40. The Funds are operated pursuant to Amended and Restated Agreements and Declarations of Trust (the "Trust Agreements").

41. The relevant provisions of the Trust Agreements permit the Trustees to bring an action to recoup unpaid contributions due to the Fund pursuant to a collective bargaining agreement, plus interest, costs, liquidated damages, and attorneys' fees.

42. The Trust Agreements, pursuant to Article VII(8), empower the Trustees of the respective Funds to "retain an accountant or accounting firm to perform payroll audits of the Employers to determine whether or not the correct amount of Contributions were made."

43. By letter dated February 18, 2014, HAVA agreed to increase its contributions to the Pension Fund pursuant to a Mandatory Funding Improvement Plan adopted by the Pension Trustees.

44. By participating in the Welfare Fund and Pension Fund and making contributions of the Funds on behalf of its employees, HAVA is bound by the Trust Agreements.

45. The Trust Agreements also provided for the Trustees to establish a policy and procedure for the collection of delinquent contributions and payroll audits of contributing employers.

46. Accordingly, the Trustees established a Delinquent Contribution and Payroll Audit Policy and Procedure (the "Collections Policy").

47. The Collections Policy applies to "contributory Employers" to the Pension Fund and Welfare Fund for the "collection of delinquent contributions and payroll and MMIS report audits."

## THE SETTLEMENT AGREEMENT

48. On February 22, 2017, the Parties signed a Settlement Agreement, with HAVA also executing an Affidavit of Confession of Judgment (the "Affidavit").

49. Pursuant to the Settlement Agreement, HAVA owed the Welfare Fund $2,743,573.80 for unpaid contributions plus interest at a rate of six percent (6%) per annum (the "Welfare Arrears").

50. Pursuant to the Settlement Agreement, HAVA owed the Pension Fund $392,663.36 for unpaid contributions for the period January 1, 2012 to December 31, 2016 plus interest accruing after December 31, 2016 (the "Pension Arrears").

51. Beginning March 1, 2017 until HAVA has repaid all the Welfare Arrears, HAVA was required to contribute to the Welfare Fund each month for all MCO Hours reimbursed that month at the rate of $1.6464 per hour.

52. Beginning March 1, 2017, HAVA was required to pay the Funds, by the last day of the month, $114,387.20 (the "Lump Sum") until the Welfare and Pension Arrears are paid in full.

53. Pursuant to the Settlement Agreement, the Lump Sum was required to be applied to the Welfare Arrears first and thereafter, to the Pension Arrears.

54. Pursuant to the Settlement Agreement, the Funds notified HAVA in writing of the total amount applied from HAVA's payments towards current contributions and toward the Arrears.

55. As part of the Settlement Agreement, the Funds waived $459,803.18 in liquidated damages and $20,333.91 in attorneys' fees. However, pursuant to the Settlement Agreement, these amounts are now due because of HAVA's default.

56. The Parties agreed that the Settlement Agreement constituted an agreement within the meaning of Section 515 of ERISA, 29 U.S.C. §1145.

57. Pursuant to the Affidavit, in the event of a default, "…HAVA hereby confesses judgment and authorizes entry thereof of the following amounts, which constitute a debt due and owing: (1) $2,743,573.80 to the Welfare Fund minus any amounts paid under the Settlement Agreement, plus (2) $392,663.38 to the Pension Fund minus any amounts paid under

the Settlement Agreement, plus (3) the amount of any contributions due for any month after the date on which the Settlement Agreement took effect which were not paid by HAVA when due, plus (4) interest at a rate of 6% per annum through the date of payment."

58.     Pursuant to the Affidavit, HAVAs agreed to submit to the jurisdiction of this court.

59.     The Defendants remitted some, but failed to remit all installment payments due under the Settlement Agreement in accordance with the payment schedule.

60.     The Defendants currently owe $2,885,270.19 under the Settlement Agreement, which includes interest, liquidated damages, and attorney's fees and costs as of September 18, 2019.

61.     By letter dated August 20, 2019, counsel for the Funds advised HAVA of its default under the Settlement Agreement.

62.     HAVA failed to cure the default within 10 days, as required by the Settlement Agreement.

63.     By letter dated September 4, 2019, counsel for the Funds advised HAVA of its default under the Settlement Agreement.

64.     As of the date of this complaint, HAVA remains in default in that it has failed to make payments due under the Stipulation and failed to remain current in payment of weekly contributions due to the Funds.

**ADDITIONAL AMOUNTS**

65.     Upon information and belief, additional contributions, interest, liquidated damages, and attorney's fees and costs will become due and owing during the course of this action, pursuant to the CBAs, Trust Agreements, Settlement Agreement, and/or Affidavit.

## CAUSE OF ACTION

66. Plaintiffs repeat and reallege the allegations set forth in the above paragraphs.

67. Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement … [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

68. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), requires that in any action by a fiduciary to enforce Section 515 of ERISA in which judgment is awarded in favor of the plan, "the court shall award the plan—

(a) the unpaid contributions,

(b) interest on the unpaid contributions,

(c) an amount equal to the greater of

   (i) interest on the unpaid contributions or;

   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent … of the amount determined by the court to under subparagraph (A),

(d) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(e) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan….

69. HAVA has failed to make certain required contributions to the Funds for the period covered by the Settlement Agreement, in violation of the CBAs and the Trust Agreements. This constitutes a failure to make contributions in accordance with the terms of the

plan documents and is a violation of Section 515 of ERISA, 29 U.S.C. § 1145, thereby giving rise to an action pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).

70. As a result of this failure, HAVA owes the Funds $2,082,849.16 in total unpaid contributions and 6% interest as set forth in the Settlement Agreement, Affidavit, and Section 502(g)(2)(B) of ERISA; liquidated damages as set forth in in the Settlement Agreement, Affidavit, and Section 502(g)(2)(C) of ERISA, including liquidated damages waived by the Settlement Agreement if the amount agreed to be paid had been paid; and all attorney's fees and costs incurred by the Funds in seeking payment of any and all amounts due, including attorney's fees and costs waived by the Settlement Agreement if the amount agreed to be paid had been paid.

71. As a result of this failure, HAVA also owes the Funds $1,920,618.86 in unpaid contributions; interest in the amount of $198,751.71; liquidated damages of $387,803.73 and attorneys' fees and costs incurred by the Funds in seeking repayment of any and all amounts due.

## SECOND CAUSE OF ACTION

72. Plaintiffs repeat and reallege the allegations set forth in the above paragraphs.

73. HAVA's failure to remit the Required Contributions in accordance with the CBAs is a breach of the CBAs, thereby giving rise to an action against HAVA pursuant to Section 301(a) of the LMRA, 29 U.S.C. §185(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter a judgment granting the Funds:

       1.       Damages against HAVA under 29 U.S.C. §1132(g)(2) in the amount of (a) unpaid contributions owing, which currently total $4,003,468.02; (b) interest on the unpaid and late paid contributions, which as of September 18, 2019 is $521,035.65, plus additional interest from the date contributions were due until the date payment is received; (c) an additional amount equal to the greater of either (i) interest on the unpaid contributions at the prime rate plus two or (ii) liquidated damages of 20% of the unpaid contributions; and (d) attorneys' fees and costs.

       2.       A declaration of the Funds' rights under the Settlement Agreement and Affidavit.

       3.       Such other legal or equitable relief as the Court deems proper.

Dated: New York, New York
       September 18, 2019

                                     Respectfully submitted,

                                     By  /s/ Michael S. Adler
                                         Lisa M. Gomez
                                         Michael S. Adler
                                         Erika M. Medina
                                         COHEN, WEISS AND SIMON LLP
                                         900 Third Avenue, Suite 2100
                                         New York, NY 10022-4869
                                         212-563-4100

                                         Counsel for Plaintiffs